## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,      :

      Plaintiff       :

      v.       :      Criminal Action No. 05-89-***(MPT)

HARRY V. McMULLEN,      :

      Defendant.      :

### GOVERNMENT'S RESPONSE TO
### PETITIONER'S 28 U.S.C. § 2255 MOTION

NOW COMES the United States, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Beth Moskow-Schnoll, Assistant United States Attorney, and hereby answers the defendant's Section 2255 Petition. For the reasons set forth below, the record conclusively shows that the defendant is not entitled to relief. Accordingly, the petition should be denied without an evidentiary hearing.

### Timeliness

The defendant's section 2255 petition is timely. It was filed on July 20, 2007, which is within one year of the date the defendant's judgment of conviction became final.

### Facts

From December, 2001, until February 18, 2005, the defendant was the treasurer of Cranston Heights Fire Company ("CH") on Kirkwood Highway in Wilmington, Delaware. As treasurer, the defendant exercised sole management and control over the department's bank accounts, and he alone monitored the activity of the department's bank accounts. PSR ¶10.

During the relevant time period, CH had the following bank accounts: a checking account at Wilmington Trust Company (WTC) which was CH's operating account used to pay the majority of bills and the payroll, an investment account at WTC, a "medical billing" account at Citizens which was used to receive revenue from health insurance companies and to fund the WTC checking account, a "hall" account at Citizens which was used to receive revenue from rental of the fire hall, a commercial checking/money market account at Citizens, and a checking II account at Citizens, a/k/a the "loan/mortgage" account, which was used to make mortgage and ambulance loan payments. PSR ¶11.

On the morning of February 17, 2005, Lynn Truitt, the president of CH, learned that CH's WTC checking account, the operating account, was overdrawn. Truitt was shocked at the news because the WTC account, which was used to pay the majority of bills and payroll, should have had a minimum balance of $100,000. PSR ¶12.

Upon learning the news, Truitt called the defendant and asked him to come to the department to talk about the overdrawn account and to review the department's bank accounts. When the two met that evening, the defendant told Truitt that he had accidentally mismanaged the WTC account by failing to account for automatic withdrawals which were regularly deducted from the WTC account. When Truitt asked the defendant to produce the bank records for CH's accounts, the defendant told her that he did not have the records because the accountant had the records and/or that the records were at his house. According to Truitt, during the brief meeting, the defendant was sweating and appeared flustered and nervous. PSR ¶13.

The next day, February 18, 2005, Truitt contacted Citizens Bank to discuss CH's accounts there and learned that in August, 2003, the defendant, without the approval of any CH

officers and/or of the CH board, had applied for and obtained ATM cards in his name for two of

CH's accounts at Citizens - the hall account and the medical billing account. Citizens also told

Truitt that the ATM cards had been used to make numerous cash withdrawals from the two

accounts and that the balances in three of CH's accounts at Citizens were severely low. At the

start of the defendant's tenure, the balance in the Citizens checking II account, the mortgage/loan

account, was $66,396.82; on 2/11/05 the balance was down to $3,211.78. At the start of the

defendant's tenure, the balance in the Citizens commercial checking/money market account was

$100,982.96; on 2/11/05 the balance was down to $159.91. At the start of the defendant's

tenure, the balance in the Citizens hall account was $13,084.46; on 2/11/05 the balance was

down to $71.18. The Citizens medical billing account was the only account that did not show a

decrease - at the beginning and at the end of the defendant's tenure, it had a balance of

approximately $17,000. Upon receiving the information, Truitt removed the defendant as an

authorized user of each of CH's accounts, froze the Citizens accounts, and suspended the

defendant from his role as treasurer. PSR ¶14.

Detective Christian Brown of the Delaware State Police interviewed the defendant on

May 24, 2005. The interview was videotaped. After receiving and waiving his *Miranda* rights,

the defendant made the following statement. He said that sometime in 2003, he, Lynn Truitt, and

Michael Doody met with a representative of Citizens Bank to open the Citizens accounts. He

admitted that it was his idea to get the ATM cards but that Truitt and Doody approved of the idea

and were aware that he got the cards. He stated that he needed the ATM cards because he

worked during the day and, therefore, needed to be able to do banking at night. He stated that he

would use the ATM cards to make cash withdrawals from the medical billing and hall accounts,

place the cash into the department's safe, and then later deposit the cash into the WTC checking

account or into the Citizens mortgage account. He also put some of the cash into petty cash.

When asked why he did not simply electronically or by telephone transfer money between the

Citizens accounts, the defendant said that he did not know that he could transfer money that way.

When asked why he did not use checks to make the transfers, the defendant stated that it cost CH

42¢ per check, so he thought he was saving CH money by doing the transfers the way he did.

The defendant further stated that all the money he withdrew via the ATM's was ultimately put

back into the department's funds somewhere and that he did not use any of the money for his

personal use. PSR ¶16.

In contrast to the defendant's statement, a review of the CH bank records revealed that

during the relevant time period, there were no cash deposits into the Citizens mortgage account,

i.e. the checking II account, and that there were only three cash deposits totaling $4,347 into the

WTC account. Interestingly, over half of the cash deposited into the WTC account, i.e. $2,307,

was deposited into the account on February 18, 2005, the day after Lynn Truitt confronted the

defendant. The bank records further show that the defendant frequently made transfers between

accounts by depositing checks from one CH account into another CH account. Finally, Lynn

Truitt remembers that the meeting with the Citizens representative occurred in the spring of 2003

and that, at that time, CH opened only the commercial checking/money market account and the

checking II account at Citizen's. At no time during the meeting did they discuss obtaining ATM

cards because the defendant did not even open the hall and medical billing accounts until months

later. The records corroborate Truitt's memory by showing that the commercial checking/money

market account and the checking II account were opened in April, 2003, while the medical billing

and the hall accounts were not opened until August, 2003. Furthermore, in order to obtain a Citizens ATM card, an individual must apply in person at a branch location. PSR ¶17.

In the summer of 2004, the defendant hired a new accountant for CH, George Estep. The defendant told Estep about only one CH account, the operating account at WTC, and, even for that one account, did not provide Estep with all the bank statements. Instead, the defendant provided Estep with the defendant's computer summaries of the account. In response to Estep's repeated requests for the actual bank records, the defendant said that he would get them to Estep. Until the defendant's embezzlement was uncovered, Estep had no information regarding any of the Citizens accounts. PSR ¶19

Review of the medical billing account and the hall account, the two accounts for which the defendant obtained ATM cards in his name, revealed the following: (1) the ATM cards on the two accounts were issued on August 1, 2003, and embossed "Cranston Heights Fire, Harry McMullen"; (2) between October 20, 2003, and December 4, 2004, the defendant made 396 cash withdrawals via ATM's totaling $181,004.75 from the medical billing account;[1] and (3) between October 28, 2003, and January 13, 2005, the defendant made 196 cash withdrawals via ATM's totaling $107,703 from the hall account. Thus, the total of all cash withdrawals is $288,707.75. Furthermore, during the same time period, the defendant wrote checks to himself from CH's accounts totaling $64,226. Therefore, the total of all funds misappropriated by the defendant was $352,933.75.

On September 27, 2005, the federal grand jury for the District of Delaware returned an Indictment charging the defendant with sixteen-counts of wire fraud in violation of 18 U.S.C.

---

[1] The withdrawals from this account stopped prior to the end of the scheme because the defendant lost his ATM card. On February 17, 2005, Citizens issued the defendant a new ATM card for this account. That card arrived at the department after the offense was discovered.

5

§ 1343. On February 9, 2006, the defendant pleaded guilty to a one-count Information charging

him with wire fraud in violation of 18 U.S.C. § 1343. In the Memorandum of Plea Agreement,

the defendant admitted the following facts: "(a) from approximately December, 2001, through

February 18, 2005, he held the position of treasurer for the Cranston Heights Fire Company and,

as treasurer, exercised sole management and control over the company's bank accounts, and he

alone monitored the activity of the company's bank accounts; (b) while treasurer, he knowingly

devised a scheme to defraud the Cranston Heights Fire Company; © from October 20, 2003, to

January 13, 2005, in carrying out the scheme to defraud, the defendant, using ATM cards he had

obtained without the consent of the officers and/or the board of the fire company, took cash

withdrawals via ATM terminals from two fire company accounts and used the money he

obtained for his own benefit; and (d) the use of the ATM terminals caused the transmission of a

writing, signal or sound by means of a wire in interstate commerce." A copy of the

Memorandum of Plea Agreement is attached hereto as Exhibit A.

The presentence report, using the 2005 edition of the *Guidelines Manual*, calculated the

defendant's Sentencing Guideline range at 27-33 months imprisonment. PSR ¶93. On July 20,

2006, after the defendant, through counsel, acknowledged that he had no objection to either the

facts contained in the presentence report or to the guideline calculation, the District Court

sentenced the defendant to a term of imprisonment of 30 months, followed by a three-year term

of supervised release. The relevant portion of the transcript of the sentencing hearing is attached

hereto as Exhibit B. The defendant did not appeal the sentence.

**Issue Raised**

The defendant alleges that the 2000 edition of the *Guidelines Manual* should have been used to calculate his sentencing range and that this would have resulted in a sentencing range of 12-16 months imprisonment.[2]

**Argument**

The threshold inquiry is whether the defendant's claim that the District Court applied the incorrect version of the *Guidelines Manual* is cognizable under § 2255. The Supreme Court has noted that § 2255 is not a substitute for direct appeal. See *Sunal v. Large*, 332 U.S. 174, 178 (1947). Thus, non-constitutional claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A district court's technical application of the guidelines is a non-constitutional issue that is not cognizable on collateral review absent a complete miscarriage of justice. Thus, barring extraordinary circumstances, an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. *United States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999); *Buggs v. United States*, 153 F.3d 439, 443 (7th Cir. 1998); *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998); *United States v. Payne*, 99 f.3d 1273, 1281-82 (5th Cir. 1996); *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (*per curiam*); *Grant v. United States*, 72

---

[2] The defendant's calculation is incorrect. Pursuant to the 2000 edition of the *Guidelines Manual*, the defendant's base offense level would have been 4. § 2B1.1(a). That would be increased by 11 levels because the loss was greater than $350,000. § 2B1.1(b)(1)(L). Under § 2B1.1(b)(4)(A), it would be increased another 2 levels for more than minimal planning. Finally, it would be increased an additional 2 levels under § 3B1.3 for abuse of position of trust. With 3 points off for acceptance of responsibility pursuant to § 3E1.1(b), the defendant's offense level would have been 16, resulting in a sentencing range of 21-27 months imprisonment.

F.3d 503, 505-06 (6th Cir. 1996); *Auman v. United States*, 67 F.3d 157, 160-61 (8th Cir. 1995); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995); *Knight v. United States*, 37 F.3d 769, 773 (1st Cir. 1994). The defendant's claim should be denied for this reason alone.

However, the defendant's claim also fails because it has no record support. While the defendant alleges that the 2000 edition of the *Guidelines Manual* should have been used to calculate his sentencing guideline range, the record, including the facts the defendant admitted in his Memorandum of Plea Agreement and the facts contained in the presentence report, shows that the defendant's criminal conduct occurred between October 20, 2003, and January 13, 2005. The defendant was not appointed to the position of treasurer of the fire department until December 2001, and he did not obtain the debit cards used to commit the offense until August 2003. Thus, there is no basis for the defendant's allegation that the offense began in 1999 and that, therefore, the district court should have used the 2000 edition of the *Guidelines Manual* in calculating his sentencing guideline range.

WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court dismiss the defendant's Section 2255 petition without an evidentiary hearing.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Beth Moskow-Schnoll
Assistant United States Attorney

Dated: December 3, 2007

**EXHIBIT A**

Filed In Open Court 2/9/06 ⟨rc⟩

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| v. | : | Criminal Action No. 05-89-KAJ |
| HARRY V. McMULLEN, | : | |
| Defendant. | : | |

### MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its

attorney, Beth Moskow-Schnoll, Assistant United States Attorney for the District of Delaware,

and on behalf of and with the consent and knowledge of Colm F. Connolly, United States

Attorney for the District of Delaware, and the defendant, Harry V. McMullen, by and through his

attorney, Joe Hurley, Esquire, the following agreement is hereby entered into by the respective

parties:

1.      The defendant, Harry V. McMullen, agrees to waive indictment and plead guilty

to Count One of the Information charging him with wire fraud in violation of Title 18, United

States Code, Section 1343, which carries a maximum penalty of 20 years imprisonment, a

$250,000 fine, 3 years supervised release and a $100 special assessment.

2.      The defendant understands that if there were a trial, the government would have to

prove the following elements with respect to Count One of the Indictment: (a) the defendant

knowingly devised a scheme or artifice to defraud; (b) the defendant did so with the intent to

defraud; and (c) in advancing, or furthering, or carrying out this scheme to defraud, the defendant

caused the transmission of any writing, signal or sound of some kind by means of a wire in

interstate commerce.

      3.     The defendant knowingly, voluntarily, and intelligently admits the following facts: (a) from approximately December, 2001, through February 18, 2005, he held the position of treasurer for the Cranston Heights Fire Company and, as treasurer, exercised sole management and control over the company's bank accounts, and he alone monitored the activity of the company's bank accounts; (b) while treasurer, he knowingly devised a scheme to defraud the Cranston Heights Fire Company; (c) from October 20, 2003, to January 13, 2005, in carrying out the scheme to defraud, the defendant, using ATM cards he had obtained without the consent of the officers and/or the board of the fire company, took cash withdrawals via ATM terminals from two fire company accounts and used the money he obtained for his own benefit; and (d) the use of the ATM terminals caused the transmission of a writing, signal or sound by means of a wire in interstate commerce.

      4.     The defendant understands that at sentencing the District Court must consider the United States Sentencing Guidelines and take them into account in exercising its discretion to determine the appropriate sentence and must also consider the other factors bearing on an appropriate sentence pursuant to 18 U.S.C. § 3553(a). The defendant further understands that the Government likely will recommend that the Court impose a sentence consistent with the sentencing range set forth by the sentencing guidelines.

      5.     The defendant agrees to pay the $100 special assessment at the time of sentencing. Should he fail to do so, the defendant agrees to voluntarily enter the United States Bureau of Prisons' administered program known as the Inmate Financial Responsibility Program through which the Bureau of Prisons will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered.

6.    Provided that the United States Attorney does not subsequently learn of conduct by the defendant inconsistent with acceptance of responsibility, the United States agrees to move for a three level reduction under USSG §3E1.1(b) based on the defendant's conduct to date.

7.    At the time of sentencing, the government agrees to move to dismiss the Indictment that was returned against the defendant on September 27, 2005.

8.    The parties reserve the right to defend the probation officer's findings at the sentencing hearing and to defend the sentencing court's rulings at any subsequent proceedings, including any appeal.  The parties realize that the Court is not bound by any stipulations reached by the parties.  The defendant understands and agrees that if the Court decides not to follow any stipulation or recommendation in this Memorandum of Plea Agreement, or if the defendant does not receive the benefits he expects from any such stipulation or recommendation, the defendant may not withdraw his guilty plea.

9.    The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past three years, or in which the defendant has or had during that time any financial interest. The defendant agrees to take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. The defendant agrees to undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years. Defendant agrees to forfeit to the United States all of the defendant's interests in any asset of a value of more than $1000 that, within the last three years, the defendant owned, or in which the defendant maintained an interest, the ownership of which the defendant fails to disclose to the United States in accordance with this agreement.

10.     The defendant agrees to forfeit all interests in any fraud related asset that the defendant currently owns, has previously owned or over which the defendant currently, or has in the past, exercised control, directly or indirectly, and any property the defendant has transferred, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense. The defendant knowingly and voluntarily consents to the administrative forfeiture of any such property. The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

11.     The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

12.     The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Memorandum of Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property

covered by this agreement is subject to forfeiture as proceeds of illegal conduct or as substitute

assets for property otherwise subject to forfeiture.

13.    It is further agreed by the parties that this Memorandum supersedes all prior

promises, representations, and statements of the undersigned parties; that this Memorandum may

be modified only in writing signed by all the parties; and that any and all promises,

representations and statements made prior to or after this Memorandum are null and void and

have no effect whatsoever, unless they comport with the subsequent written modification

requirements of this paragraph.

COLM F. CONNOLLY
United States Attorney

_____            BY:  _____

Harry V. McMullen                                Beth Moskow-Schnoll
Defendant                                        Assistant United States Attorney

_____
Joe Hurley
Attorney for Defendant

Dated: February 9, 2006

**AND NOW**, this ___9th___ day of ___Feb.___, 2006, the foregoing Memorandum of

Plea Agreement is hereby (accepted) (rejected) by this Court.

_____
HONORABLE KENT A. JORDAN
United States District Court Judge

**EXHIBIT B**

1

1        IN THE UNITED STATES DISTRICT COURT

2       IN AND FOR THE DISTRICT OF DELAWARE

3            - - -

4  UNITED STATES OF AMERICA,  :  CRIMINAL ACTION
              :
5      Plaintiff,   :
              :
6       v.      :
              :
7  HARRY V. McMULLEN,    :
              :
8     Defendant.   :  NO. 05-89 (KAJ)

9            - - -

10         Wilmington, Delaware
       Thursday, July 20, 2006 at 2:30 p.m.
11        SENTENCING HEARING

12            - - -

13  BEFORE:   HONORABLE **KENT A. JORDAN**, U.S.D.C.J.

14            - - -

15

16  APPEARANCES:

17     BETH MOSKOW-SCHNOLL, ESQ.
       Assistant United States Attorney
18
       Counsel for Government
19

20     LAW OFFICE
       BY:  JOSEPH A. HURLEY, ESQ.
21
       Counsel for Defendant
22

23

24
            Brian P. Gaffigan
25           Registered Merit Reporter

2

1                              - oOo -

2                       P R O C E E D I N G S

3                (REPORTER'S NOTE:  The following sentencing

4       hearing was held in open court, beginning at 2:30 p.m.)

5                THE COURT:  Good afternoon.  Please be seated.

6                MS. MOSKOW-SCHNOLL:  Good afternoon, Your Honor.

7       Now is the time the Court has set for sentencing in the case

8       of United States vs. Harvey V. McMullen, Criminal Action

9       05-89.  I will hand forward a motion and order to dismiss

10      the Indictment pursuant to the plea agreement.

11               THE COURT:  I'm sure this is unopposed by the

12      defense; right?

13               MR. HURLEY:  That is correct, Your Honor.

14               THE COURT:  I'll sign it now.

15               Mr. Hurley, would you please come forward with

16      your client?

17               Am I correct, Mr. Hurley, that the factual and

18      legal objections associated with the presentence report, to

19      the extent there were any of them, were resolved from the

20      defense perspective and you have no disagreement with the

21      guideline calculation?

22               MR. HURLEY:  Good afternoon.  Yes.

23               THE COURT:  Okay.  Ms. Moskow-Schnoll, from the

24      Government's perspective, any objection to the presentence

25      report or the guideline calculation?

3

1      MS. MOSKOW-SCHNOLL:  No, Your Honor.

2      THE COURT:  All right.  I agree with the

3   calculation as well.  The calculation yield and offense

4   level of 18, criminal history category of 1.  That is a

5   guideline range of 27 to 33 months imprisonment as well as

6   fine and restitution, supervised release obligations.

7      I'll go ahead and recognize you now, Mr. Hurley,

8   for any remarks, other information you want to put before me

9   are with regard to the sentencing.

10      MR. HURLEY:  Yes.  This is the opportunity, I

11   would ask Mr. Fulcher to present brief testimony regarding

12   his evaluation of Mr. McMullen.

13      THE COURT:  All right.  In that case,

14   Mr. McMullen, go ahead and have a seat and I will hear from

15   Mr. Fulcher.

16      MS. MOSKOW-SCHNOLL:  Your Honor.

17      THE COURT:  Ms. Moskow-Schnoll.

18      MS. MOSKOW-SCHNOLL:  Your Honor, I would note

19   for the record I have not received a report from

20   Mr. Fulcher.  I just have an idea what he is going to

21   testify.

22      MS. MOSKOW-SCHNOLL:  If he is an expert, I did

23   not receive a report and I talked to Mr. Hurley about that.

24      THE COURT:  Your objection is noted.  I will

25   hear from Mr. Fulcher.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

UNITED STATES OF AMERICA,                  :
                                           :
           Plaintiff           :
                                           :
        v.                         :   Criminal Action No. 05-89-***(MPT)
                                           :
HARRY V. McMULLEN,                         :
                                           :
           Defendant.          :

## ORDER

AND NOW, this _____ day of _____, 2008,

upon consideration of Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct his Sentence and the Government's Answer thereto, it is ORDERED that Petitioner's

motion is DENIED.

                          By the Court:


                          _____

                          MARY PAT THYNGE
                          United States Magistrate Judge

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                  :

               Plaintiff                       :

        v.                                        :            Criminal Action No. 05-89-***(MPT)

HARRY V. McMULLEN,                         :

               Defendant.                    :

### CERTIFICATE OF SERVICE

I, Beth Moskow-Schnoll, Assistant United States Attorney for the District of Delaware,

hereby certify that on December 3, 2007, I electronically filed the **Government's Answer to**

**Petitioner's 28 U.S.C. § 2255 Motion** with the Clerk of the Court using CM/ECF. I further

certify that I caused a copy of the foregoing to be sent via U.S. mail to counsel of record as

follows:

    Harry V. McMullen
    Reg. No. 05010-015
    FCI Morgantown
    P.O. Box 1000
    Morgantown, WV 26507

                                         Beth Moskow-Schnoll
                                         Assistant United States Attorney